[No. 30277. *En Banc.* February 13, 1948.]

HEINIE BERGER et al., *Appellants,* v. SAILORS UNION OF THE PACIFIC et al., *Respondents.*[1]

*Simmons & McCann* and *McMicken, Rupp & Schweppe,* for appellants.

*Bassett & Geisness,* for respondents.

MILLARD, J.—Heinie Berger and thirteen others, doing business as a limited partnership under the firm name and style of Aleutian Islands Navigation Company, Limited, brought this action to enjoin the Sailors Union of the Pacific, a labor organization, and Edward L. Coester *et al.,* members and officers of the sailors' union, from picketing the partnership's motorship Garland and from hindering any person from transacting business with the plaintiffs in connection with the operation of the Garland.

Hearing to the court on order to show cause why injunction should not be granted, resulted in entry of decree denying the application for an injunction. Plaintiffs appealed.

The limited partnership, composed of appellants, was engaged in carrying freight between Seattle and Alaska on the

[1] Reported in 189 P. (2d) 473.

motorship Garland, a small vessel which was chartered from the Berger Transportation Company for a charter hire of sixty per cent of the profits. Each limited partner contributed one thousand dollars, which was paid into the partnership fund and used as an operating fund. The investment of any partner, when he withdrew from the partnership, was refunded. It was not a requisite of admission to the partnership that one be a member or nonmember of any union. Each limited partner was allowed a drawing account of a designated sum monthly which was charged against the entire operating cost of running the vessel, and the net profit, after payment of sixty per cent of the charter hire, was divided equally among the limited partners according to the duration of such partner's term of membership in the partnership.

Prior to December 31, 1946, the Garland made one trip to Alaska. It made one trip in January, 1947. In February, 1947, appellants brought their motorship alongside a wharf in Seattle to be loaded with freight for another trip to Alaska. While loading a cargo of approximately five hundred tons, about eighty-five tons of which had been loaded by noon, a picket line was established by respondents, and the longshoremen refused to cross the picket line to continue loading the ship.

Appellants insist that the ship was operated by a limited partnership, in which Heinie Berger was the general partner and the crew members were the limited partners. Respondents contend that the partnership is a mere sham, and that the monthly drawing accounts were in fact wages of the limited partners.

In the course of operating the vessel, certain crew members or limited partners left the ship and others joined it in their stead. When the men left the ship, they left the partnership. When one of the partners left the ship in November, 1946, he was paid the stipulated drawing account from which income tax deductions were made, doubtless upon the theory that his relationship to that of the partnership was that of an employee. The Berger Transportation Com-

pany, from which the Garland was chartered, retained complete control of the venture, as is manifested by the fact that Heinie Berger, a major stockholder of the Berger Transportation Company, is designated the general partner and has complete control of the partnership business.

The relationship is not distinguishable from that of the usual employment. The crew members were exchanging their labor for compensation and performed their duties under the supervision of a man who possessed and exercised the power to direct them, as well as to discharge them. See *Skrivanich v. Davis, ante* p. 150, 186 P. (2d) 364, in which the authorities are collected to the effect that the duties performed, as in the case at bar, by respondents, constitute personal services, and that the remuneration received by them is wages. In other words, the relationship in the case at bar is, as contended by respondents, one of master and servant.

In addition to the circumstances recited, from which respondents contend that respondent union has a valid interest in the welfare of persons employed as with the limited partnership, is the fact that three members of the crew, at the time the picketing commenced, were members of respondent union and each held a union card evidencing their rights and privileges in the matter of representation concerning terms and conditions of employment.

There is evidence that all of the ships engaged in Alaska trade except the Garland do not employ any unlicensed members of their deck department who are not members of the Sailors Union of the Pacific and holders of certificates as able-bodied seamen and have had at least eighteen months' experience at sea. There is evidence also that of the seven unlicensed members of the deck department of the Garland, only one was an able-bodied seaman and only four were members of the union.

It was the purpose of the picketing to persuade appellants to enter into an agreement with respondent union in order that there might be on the Garland a union delegate through whom the union would be apprised of conditions and prac-

tices on that ship, thereby assuring a reasonable standard of pay, comparable to that established on numerous ships with which the Garland had been competing.

There was no violence or vile language on the part of the pickets except in an isolated instance, when one officer of respondent union applied a vile epithet to the captain of the Garland when the captain was on the wharf where the vessel was loading. On occasions the pickets wore arm bands labeled "S.U.P. Pickets." There is no evidence that the pickets were endeavoring to convey any information to the public, other than the fact that they were picketing appellants' vessel.

■ The facts recited above establish the existence of a labor dispute, hence injunction will not lie to prohibit respondent labor union and its members from peacefully picketing appellants' motorship Garland for the purpose of completely unionizing that vessel's crew, of which four were members of the union. Rem. Rev. Stat. (Sup.), § 7612-1 [P.P.C. § 695-1] *et seq*.

The judgment is affirmed.

MALLERY, C. J., concurs.

HILL, J. (concurring in the result)—I concur in the result because I am convinced that there was no bona fide partnership. The arrangement relied upon by appellants was a sham, colorable, and unsuccessful device to avoid the existence of an employer-employee relationship. Certain members of the crew of the M. S. Garland being members of the union, there was, under our decisions, a labor dispute.

BEALS, SCHWELLENBACH, and JEFFERS, JJ., concur with HILL, J.

SIMPSON, J. (dissenting)—The majority opinion in this case holds that there was a labor dispute. The last paragraph of the opinion reads as follows:

"The facts recited above establish the existence of a labor dispute, hence injunction will not lie to prohibit respondent labor union and its members from peacefully picketing appellant's motorship Garland for the purpose of completely unionizing that vessel's crew, of which four were members

of the union. Rem. Rev. Stat. (Sup.), § 7612-1 [P.P.C. § 695-1] *et seq.*"

The majority opinion, by this holding, comes to the conclusion that Rem. Rev. Stat. (Sup.), § 7612-1, is a valid statute, which restrains the courts of the state of Washington from issuing any injunction in a labor dispute. This question has been decided adversely to the opinion by this court in *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P. (2d) 397. In that case, we concluded that a labor dispute existed.

That the question of the constitutionality of the above-mentioned statute was before the court in that case, is shown by the following excerpt from the cited case:

"The question now presented to us is whether the court had power and authority to issue the restraining orders. Appellant rests his contention that the court had no such power or authority on chapter 7, Laws of 1933, Ex. Ses., p. 10, § 1, Rem. Rev. Stat. (Sup.), § 7612-1 [P. C. § 3467-21], which is a part of the labor disputes act. That section reads as follows:

" 'No court of the State of Washington or any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, *except in a strict conformity with the provisions of this act*; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this act.' (Italics ours.)"

In that case, this court concluded that the section of the statute quoted in the majority opinion in this case, was unconstitutional.

In deciding the *Blanchard* case, this court referred to the manner in which our government is set up, and mentioned the powers and liabilities given to each one of the branches of our government—that is, the executive, legislative, and judicial departments. I quote again from the *Blanchard* case in order to show just exactly what this court decided:

"Thus, by the constitution, and independently of any legislative enactment, the judicial power over cases in equity has been vested in the courts, and, in the absence of any

constitutional provisions to the contrary, such power may not be abrogated or restricted by the legislative department. Any legislation, therefore, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department.

"The writ of injunction is the principal, and the most important, process issued by courts of equity, it being frequently spoken of as the 'strong arm of equity.' Its function is to furnish preventive relief against irreparable mischief or injury. Its object and purpose is to preserve and keep things *in statu quo* until otherwise ordered, and to restrain an act which, if done, would be contrary to equity and good conscience. 14 R. C. L. 639. The granting or withholding of an interlocutory injunction is addressed to the sound discretion of the court, to be exercised according to the circumstances of the particular case. While utmost care and caution are to be observed in the exercise of the jurisdiction, and while the relief sought is to be granted only upon a clear showing of necessity in order to afford immediate protection of a complainant's right, yet, when these essentials have been satisfied, it is the duty of the court to exercise its equity power and grant the necessary relief.

"In the light of the foregoing constitutional provisions and equity principles, we turn our attention to the act under consideration.

"From beginning to end, it breathes the spirit of limitation upon the jurisdiction of the court. Its title, by its very terms, announces a limitation on 'the powers of the courts of this state.' Section after section begins with the formula that

" 'No court of the State of Washington or any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute,'
except under the restrictions imposed by the act. If the act has any purpose at all, manifestly it is to deprive the courts of the equity powers which they had customarily and rightfully been exercising.

"It is no answer to say that the act seeks to prevent the courts from enjoining workingmen from doing what they have the right to do. In so far as the act denominates such rights as are lawful, it is but declaratory of what the law has been in this state for many years."

The *Blanchard* case was decided by this court in December, 1936. There has been no criticism of that opinion, and no effort to overrule it. It stands as the law of the state of Washington up to the present time.

I make these statements and write this dissent to call the attention of the members of this court to the fact that the majority opinion entirely overrules the *Blanchard* case. *Blanchard v. Golden Age Brewing Co.* was properly decided by this court, and should remain the law.

STEINERT, J. (dissenting)—I concur with Judge Simpson in holding that the majority opinion is contrary to the law as declared by this court in *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397.

I dissent from the majority opinion for the further reason that the relationship between the appellants was one of limited partnership, not that of master and servant. It may well be true that appellants entered into the partnership arrangement with the distinct intention and deliberate purpose to avoid a relationship of master and servant and escape the obligations, liabilities, and hazards of the latter relationship. That, however, does not make their effort "a sham, colorable, and unsuccessful device," as suggested in the concurring opinion. Corporations have for years been organized, and still are, with the distinct and deliberate purpose to avoid individual liability on the part of its members; but that fact does not make the corporation illegal nor rob it of its rights under the law.

I think the injunction should have been granted.

SIMPSON and ROBINSON, JJ., concur with STEINERT, J.